First case on the docket is 2-19-10574, 18 Rabbits, Inc., a Balfour, Inc., plaintiff, athlete, the Hearthside Food Solutions, LLC, Delaware Limited Liability Corporation, defendant, defendant. Arguing on behalf of the defendant and the defendant, Ms. Denise A. Lazar. Arguing on behalf of the plaintiff, athlete, Mr. William M. Goody. Are you both ready to proceed? Then when you're ready. Thank you, Your Honors. Denise Lazar is counsel for Hearthside Foods, LLC. It was an abuse of discretion for the trial court not to apply the doctrine of forum nonconvenience to dismiss this case to be refiled in Kent County, Michigan. Let me ask you a threshold question. Who has the burden, does the defendant have the burden to show that the relevant and private factors strongly favor the defendant's choice of the forum? It's the defendant's burden, is it not? Absolutely, it is the defendant's burden. Would you like me to continue? Sure, but I mean that's obviously, it's in the mix here. Absolutely. That and the standard of review are also important considerations. Absolutely. The abuse of discretion is the standard and it is my burden as the defendant in the trial court case to show that the factors strongly favor transfer. This court should reverse and remand with instructions to dismiss the case allowing 18 rabbits to refile in Kent County, Michigan per Illinois Rule 187. The forum nonconvenience doctrine is an equitable doctrine as this court has discussed in certain underwriters versus Illinois Central Railroad. Considerations of fundamental fairness and sensible and effective judicial administration and as Fennell discussed, it allows the courts to direct to alternate forums where justice would be better served. And the court applies a balancing test weighing both private and public factors, not against each other, but these are a totality of looking at all of the factors. And the doctrine is by its very nature as an equitable doctrine flexible and founded on fundamental fairness. What's unfair about Illinois? Pardon me? What's unfair about the case being tried in Illinois? This case is about the manufactured products which all occurred in Michigan, in Grand Rapids, Michigan. Is there a case law that says that's the most important consideration? No, no. But in this case it's a factual analysis under forum nonconvenience. And in this case the claim is that the manufacturing was not sufficient and that sufficient granola bars were not manufactured, that they were not of a sufficient quality, and that mixed conforming and nonconforming bars were provided to 18 rabbits. And so it's that manufacturing and that manufacturing facility and those people who did the manufacturing who are really on trial and who have to defend and be able to say, no, indeed we did manufacture properly, we did indeed meet specifications, we did indeed do what you asked us to do. Right. There's potentially I think about a dozen witnesses. Only three were from Michigan. Three or four from Michigan. Three or four from Michigan, yes. The rest? There are several from Illinois. And then the plaintiff is from California. And the plaintiff has several witnesses in California. And then the person who is the chief executive of the plaintiff has recently relocated to Oregon. And so as a noncitizen plaintiff, 18 rabbits is entitled to less discretion. Not no discretion, but less discretion as the foreign plaintiff who comes in to this court. Now during the course of these parties' business relationships, so in 2016 and 2017, there were in-person meetings. And those in-person meetings happened in Grand Rapids, Michigan. So when we look at what the actions of the parties were and where they thought it was important when they were conducting business together, where did they meet? In Grand Rapids, Michigan at Hartside's manufacturing facility. Where's the defendant's headquarters at? Just out of curiosity. The defendant's headquarters is here. Okay. In Downers Grove. Is that any consideration in this case? It is not a consideration under Gridley. The Gridley court said that defendant doing business in county is not a definitive factor on a form nonconvenience analysis. It's not definitive, but it is given some weight. It's given some weight. I was going to say, how can you assert that it would be inconvenient to defend this case in your home county? And that's what Gridley was about. I'm sorry to interrupt you, sir. No, go ahead. Because the facility that's on trial is in Michigan, and all of the inspections are going to be there, the core witnesses are going to be there. I can't show a DuPage jury. I don't have the possibility of showing a DuPage jury that facility, showing them that it is a good facility and that it manufactured properly. I can't do it. I think Judge Hudson, you had a question. Yeah. I mean, I have to concede. There's no question that there are some factors that clearly favor your interest in your side of the case. There are other factors that clearly favor the plaintiff's side of the case. The standard review says in so many words, we reversed the trial court when no reasonable person would agree with the decision. That's a pretty high burden, isn't it? It is a high burden. It is a high burden. So tell us why no reasonable person would agree with the trial court's decision. Well, take a look at Gridley. So Gridley was against State Farm, and it had to do with salvage titles in Louisiana. Now, State Farm does business all over Illinois and all over the country. And there's no indication that the work related to those Louisiana titles didn't happen in Illinois. But the court found that Louisiana was the better place because all of those salvage titles, everything that needed to happen was going to be those documents and those important records, all of that happened in Louisiana. Now, the documents certainly could have been sent up here, but the focus of the case was those salvage titles. And here the focus of the case is were these products properly manufactured? Did they get the benefit of the bargain? Okay, so we know the nature of the facility, you emphasize it would be one important consideration when the manufacturing process took place. What are the other factors that you can strongly favor your position besides that? The ability to access the testimonial, the people who actually did the manufacturing, those people are there now. They've said that there are witnesses elsewhere, but the people who are actually doing the manufacturing are in Grand Rapids, so the relative ease to access. How far up the drive, I hate to ask this, is Grand Rapids from DuPage County? How long would it take just to drive there? My guess is about four and a half hours. I think it's about between 200 and 250 miles. So it isn't like somebody's going from Florida to California or California to New York, is it? We're still in the Midwest, aren't we? We're still in the Midwest, but we're the defendant, and the plaintiff chose to do business, the 18 Rapids chose to do business and chose to have its bars manufactured in Michigan. They chose to enter into a contract with a defendant corporation that was right here in Downers Grove, right? An oral contract that was formed after their in-person visit in Grand Rapids, Michigan. Nonetheless, the contract was entered into here. That's not clear. That's not clear. This is an oral contract. There is not a writing. There's a nondisclosure agreement that's attached that is governed by Delaware law, but the nondisclosure agreement is not sued on by the plaintiffs, and the plaintiff asserts that there are oral communications and emails that make up the contract, and those documents are not a part of this writing. Weren't the key aspects of the agreement, though, initiated by and dictated by the Illinois employees? No, because the manufacturing, what the facility can manufacture, they have to determine that, and that's the people based there, the vice president of manufacturing, the quality control officer, the national accounts person are all people in Michigan, and Mr. Wojak, our witness, stated that those are the people who primarily interacted with 18 Rabbits. Judge, Justice Hudson, you also asked about other factors that strongly favor. The public factors, including judicial administration. We have the DuPage County Court, which, according to the Illinois State Court records, had in 2017 approximately 19,000 new cases filed. But, Counsel, you have that in your brief, but when we look at the venue congestion issue that you just raised, isn't the trial court in a better position to determine the impact on its docket? Absolutely. And the trial court said that the judge said in so many words that he has enough cases and that if he could get rid of it, the case he would. Isn't that something that all trial judges say? No. Gee, if I could ship this case to somebody else to do. But, I mean, there is a difference. Clearly, Kent County, Michigan, has far less cases. It's total volume, but it's also case per judge. I assume that Kent County also has far less judges handling that case load. Is that also correct? According to the 16 or 17 judges versus between judges and associate judges in DuPage, the 2017 number was about 43. So it is less, but it's not on the same level as the number of cases filed. And imposing jury duty on DuPage County, imposing this, what's the case that that jury is going to hear about? The jury is going to hear about manufacturing facilities in Michigan. They're going to hear about granola bars that were manufactured in Michigan that were supposedly not conforming. They're going to hear about visits by 18 rabbits to Michigan. And they're going to necessarily ask themselves, why am I sitting here hearing this case? What does this have to do with me? There is a local interest in deciding local controversies, which is one of the other important public factors. And Kent County, Michigan, has a strong connection, a strong interest in the claims against a local manufacturing facility that 18 rabbits claims did not manufacture properly. Well, let me stop you there and ask you that question. So, okay, obviously a visit to the site would be advantageous, would be helpful. But if the center of the action is an action alleging that the defendant did not deliver bars as promised, did not manufacture them to specifications, can't they be determined without a visit to the site? The law is it isn't the necessity. At this level, it's the possibility. So we have to look at the possibility. It would be ultimately up to the ultimate trial judge to determine the necessity. So our only job right now is to look at the possibility. And I would posit that, you know, if the Illinois Supreme Court would say, and the Coopman jury shouldn't go to Madison County, that in, I believe, the Bland case, that I don't think that we should be, I think it's unlikely that a DuPage judge would ever send a jury to Green Rapids, Michigan. I think that's a fair assessment. I wouldn't want to be, I wouldn't want to ask for that. And the DuPage County Courts and Communities shouldn't be burdened in this particular case. The trial court's findings were unreasonable when you look at the declarations and the evidence. Mr. Wojcik, Harcite's vice president of manufacturing, stated that the 18 Rapids employees came to Michigan. He named the primary Harcite employees based in Michigan who interacted with 18 Rapids. The manufacturing happened there. And 18 Rapids, again, is a foreign plaintiff. It is not, it is a California company. It is not based in Illinois. And it wants to be able to fly into Chicago because it's slightly closer than flying to Grand Rapids. It's cheaper. And it's cheaper. Well, the hotel's probably cheaper in Grand Rapids. Food's probably cheaper in Grand Rapids.  Counsel, you're not alleging that the trial judge did not engage in the balancing factor of public and private interests, are you? No. No, he didn't tell us what his findings were, though. Okay. But he referenced that he used considerations of the necessary factors, did he not? The court He didn't just take the bench and say I'm denying the motion, did he? Pardon me? He didn't just take the bench and say I'm denying the motion? No, he took argument and he did make an oral ruling which was incorporated in his order. But he did not go through the individual factors and say how he agreed to them. Other than that plaintiff was entitled to some deference and that a portion of the first count did arise in DuPage County. But because of the tort aspects and the other aspects to the claims, that was where he found, that was where the question was for him. The 18 rabbits raises two points. Go ahead. You can finish your thought. Raises several points. And it challenges and says that it doesn't, that the data from the Illinois courts is just unbelievable. And I would posit to this court that that is the official data of the court and should be relied upon. Thank you. And you will have a chance to reply. Good morning, Your Honors. William Mooney for 18 Rabbits, Plaintiff, appellee. As counsel for appellant advised, we're here before the court to review the ruling of the opinion of Judge Robert Brome in DuPage County, denying defendant's motion to dismiss this case pursuant to form nonconvenience. The ruling in that case was that the action arose in Illinois, at least in part, and that the balance of factors did not strongly favor the transfer of this case. Counsel, let me ask you this. You're not an Illinois resident, and it can be argued your injury didn't occur in Illinois, and it seems the claim arose out of Michigan. So why shouldn't the court have considered this as some kind of foreign shopping? Well, I don't believe there's any allegation of foreign shopping. That wasn't an issue that was before the trial court. Defendant didn't raise that issue. But we don't believe there's foreign shopping occurring here because if you look at the transactions, you see, okay, the production may have occurred in Michigan, as defendant alleges, but plaintiff also has to perform under the agreement, and plaintiff's performance was delivered in Illinois. So you have two jurisdictions involved in this transaction. Illinois is the place of plaintiff performance, and Michigan, arguably, is the place of defendant's performance. So I would argue, and I have argued, and I believe the trial court agreed, that that is an indication that the cause of action arises in Illinois, at least in part. That goes to the standard set forth by this court in the Wilder case, where the court reviewed what was necessary for an action to arise within the state of Illinois and thus entitle a party to substantial deference in their choice of form. In the Wilder case, this court agreed that where an action, where acts occur in Illinois, pursuant to the landmark decision, then the case gives rise to an action in Illinois, and plaintiff's choice of form is entitled to substantial deference. And so that's really our main point. There's obviously in the record a number of transactions that occurred that we believe occurred in Illinois and are very relevant to the action. They give rise to the action. But I believe the primary factor is that really this is a contract dispute, and the contract arose in two jurisdictions. Isn't one of the key issues whether the Michigan facility had the capacity to manufacture the granola bars, and doesn't that strongly favor the Michigan form? That is a factor. But also there are other factors. For example, what if the headquarters in Illinois and the employees in Illinois directed the Michigan facility to not produce the bars? So that's also a factor. Couldn't that be determined without involving the site, the visit to the site? In fact, I mean, you raise a good point. If the manufacturing process took place in Michigan, wouldn't it be helpful to be able to view the manufacturing process? Isn't that an important consideration on whether or not the product was defective? I mean, your site's not an issue. Yeah, there's other factors, but isn't that an important factor? I don't know that there's evidence to indicate that that would be necessary at this point, but I'm not sure that we're there yet. It's not necessary. It's a possibility. Right. So possibility, sure. It would not be possible to visit the Michigan site. But at the same time, there's no allegation that the Michigan facility is in the exact same condition that it was when the manufacturing occurred. So I'm not sure that a site visit would be even valuable at this point. But if a site visit was required, you would agree that it would be impossible for an Illinois jury to visit the facility? I would agree with that. Now, we can affirm on any basis in the record, irrespective of the court's reasoning or lack thereof. What did you discern from the court's reasoning? What factors did the court consider in arriving at this decision? Do we know? Well, I believe that the court focused on the fact that the agreement appeared to arise in both Illinois and Michigan and that the cause of action arose, at least in part, in Illinois. And that was a factor. An additional factor was with respect to the Supreme Court's holding and jurying. Our record indicates that multiple witnesses are located in a variety of jurisdictions,  and when you have witnesses in multiple locations, the court looks to whether Illinois is central and convenient. I think that was also a factor. The court didn't delineate all the specific public and private factors set out in the case law, correct? That's correct. Okay. Thank you. As counsel advised, the standard of review, of course, is abuse of discretion, and Honorable Hudson, as you so indicated, yes, of course, the court can affirm on any basis in the record. And I must apologize. In preparing my brief, in hindsight, I realized that what I should have done is prepare a statement of facts for an appellee, which I did not do. I should have done it because I believe there are omissions in the statement of facts that were presented by appellant for the purposes of filing the petition for leave to appeal. While you're on the topic, do you want to summarize them for us? Absolutely. The key facts, I believe, that in the initial phases of the contract negotiation, defendants' employees in Illinois directly interacted with the plaintiff, and those facts are alleged in the complaint. Defendants' Illinois vice presidents made misrepresentations during telephone status calls. That was during the negotiation phase. That occurred in Illinois, and it's alleged in the verified complaint. Defendants' Illinois headquarters rejected plaintiff's request for net 30 credit terms. That means that the plaintiff would have to prepay for all the production that occurred in the case, which is a substantial burden on any commercial transaction. That was a decision that was presented to Illinois, and it was a decision that was made by the Illinois headquarters. We think that particular decision was very significant in this case because it prevented the plaintiff from having any opportunity for self-help. This is a multi-production run, three productions, and when defendant failed to produce the bars, plaintiff had already paid for what they didn't receive. So they had no opportunity to mitigate their losses in this case, and so I think that's a significant fact occurring in Illinois, occurring at the Illinois headquarters. But it's all testimony. Right. Those witnesses could testify in Wheaton, or they can testify in Grand Rapids. That's correct, and I believe if you just look at the numerosity of the witnesses, and there's really no discussion of convenience with respect to defendants moving witnesses from either Michigan to DuPage or DuPage to Michigan, but I believe the numerosity would favor DuPage because four. Four versus three. Correct. One witness. Yes. Want me to hang my head on one witness? I mean, you think that's the dispositive issue here is the difference, one additional witness? No, I don't believe that is. I don't believe that's the significant issue. I think the significant issue is that we also have four witnesses in California and one in Oregon. And now, mind you, this case is still in the pre-discovery stages. We haven't completed FACT. So there could be many more witnesses out there. Obviously, everywhere the defendant produced these. But it's just as likely they're from Michigan as somewhere else if we don't know where they're from at this point. You'd be asking us to speculate. That's true. Counsel, we were going to ask you to summarize your strongest arguments as to why we should affirm the trial court's rule. What would it be? The single strongest argument is most likely the Supreme Court ruling inquiring and its application of this case, which is that where you have multiple witnesses in multiple jurisdictions and Illinois or the chosen forum is most centrally located and convenient to all the parties, then the plaintiff's choice of forum should prevail. Obviously, we're entitled to substantial deference because we believe this contract cause of action arises in Illinois. But our strongest argument, I believe, is under Guarine. Our second strongest is probably under the Wilder case, where, again, the cause of action arises in Illinois and the plaintiff's choice of forum is entitled to substantial deference. Maybe the third argument that I think is also worth considering is that the defendant has failed to meet their burden in this case. The declaration of Mr. Wojcik, which is attached to the defendant's petition or motion, is grossly deficient. The case law does require that the defendant allege facts indicating that Illinois or the alternative forum is more convenient for all the parties and witnesses. In this case, they did not do that. The declaration of Mr. Wojcik does not mention convenience at all. There's no mention of that. Isn't it somewhat implicit in his statements? I mean, those statements of fact are not indicating that it's inconvenient. I mean, does he have to say that in so many words? Does he have to use the word convenient? Well, I don't know that he has to use the word convenient specifically, but there's no discussion of travel expense. There's no discussion of time expense, travel times. There's no discussion of any burden on Illinois versus Michigan. And I think that's the hurdle that must be met. So, basically, part of your argument is this case turns on the burden issue and turns on the standard of review. It does. It does. And, of course, again, I apologize for not preparing a statement of facts, but this court can affirm on any basis appearing in the record whether or not the trial court has ruled on that basis. And there are extensive facts indicating that this cause of action arises in both Illinois and other jurisdictions. That's not really in dispute, but we believe that Illinois has a substantial interest in this case because the financial aspects of this transaction occurred in Illinois. And as much as this case is a case about production and manufacturing, it's also a case about the financial aspects of the agreement. And we're going to need witnesses, and there's going to be evidence that's related to that that comes out of Illinois. Illinois has a substantial interest in reviewing the acts of its citizens, and there were many acts that occurred that were initiated by defendant within the state of Illinois that impacted this transaction. What about the court congestion? I'm sorry? Court congestion. Number of cases. Court congestion. Well, so I was not sure that we were talking about apples to apples with the court congestion numbers. I recognize that defendant has produced numbers indicating that there's a very large number of cases that have been filed in DuPage versus the number of cases that are filed in Kent County. I don't dispute that gross number, but I don't believe there's a sufficient breakdown in the numbers that have been provided to indicate we're talking about law division cases. Obviously, a judge's docket, if it's full of law division cases, is going to translate much differently than 400 traffic cases. And I'm not sure that we know what those cases are. We haven't been told that. We just were given a gross number, I believe. So, you know, I believe the judge was clear, you know, like you said, Your Honor, any judge would indicate it would be great if I had less cases. But in this case, he couldn't find any reason from the docket aspect that he should dismiss the case. So I don't see any reason why there was an abuse of discretion in that decision. I did have a couple points from the appellant's arguments that I wanted to touch on briefly. One, obviously, and I think maybe I touched on this enough, but I want to reiterate it. It's that appellant asserts that, really, the entire cause of action arises in Michigan. And, again, that's really not supported by the record before this Court. It's not part of the decision of the trial court. And, honestly, we assert that the place of appellee's performance under the contract is just as equally significant as the place where appellants pledge as they perform their portion of the agreement. I think that that is a significant fact. They're entitled to their significance. We're entitled to ours, and we believe Illinois is the correct place. Now, with respect to its allegation, the appellant's allegation, that Michigan employees are the primary contract with the plaintiff and appellee, I think that that also directly contradicts the allegations of the verified complaint and also the counteraffidavit attached to appellee's motion before the trial court. I believe that's all I have. I've touched on all three of my main arguments. Thank you, Your Honor. I appreciate your time. Thank you very much. Thank you. Do you wish to reply? Yes, Your Honor. One of the points that was made, you do have to look at the facts that are in this record, and this discussion about credit terms is not in the record. If you look at the complaint, which starts at C02, and you look at paragraph 10, it talks about payment going into Illinois. There's no discussion in either the verified complaint or in the declaration of Ms. Vera Cruz, which starts at approximately C99, about any discussion of credit terms.  Just the payment. This court should, this case should be tried in a forum that has the greater connection to the occurrence, the occurrences that formed the basis, that formed the gravamen of the complaint. And what formed the gravamen of the complaint was this manufacturing of these granola bars, and therefore I ask this court to enter an order with instructions that this case be dismissed with appropriate leave under Supreme Court Rule 187 so that 18 Rabbits can refile in Kent County, Michigan. Thank you, Your Honor. Sure. Thank you. All right. We will issue a decision in due course. I thank both sides for excellent arguments right on point. And we will be in recess now until the next argument at 9.30.